IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KIMBERLY S. MCKINNEY,

        Plaintiff,

v.                                                                                                  Civil Case No.: 1:15–CV–90
                                                                                                             (JUDGE KEELEY)

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

        Defendant.

## REPORT AND RECOMMENDATION

For the reasons that follow, I recommend that [ECF No. 9] Plaintiff's Motion for Summary Judgement be **GRANTED IN PART** and that [ECF No. 11] the Commissioner's Motion for Summary Judgement be **DENIED**.

## I. INTRODUCTION

On May 27, 2015, the Plaintiff, Kimberly S. McKinney ("Ms. McKinney" or "Plaintiff"), filed this action for judicial review of an adverse decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for disability insurance benefits ("DIB") and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. ECF No. 1. The Commissioner filed her Answer on August 3, 2015. ECF No. 6. The Plaintiff then filed her Motion for Summary Judgment on September 1, 2015. ECF No. 9. The Commissioner filed her Motion for Summary Judgment on September 28, 2015. ECF No. 11.

## II. FACTS

### A. Procedural History

Plaintiff applied for SSI and DIB benefits alleging a disability beginning on January 26,

2010. R.16. Plaintiff's claims were initially denied on March 21, 2012, and upon reconsideration on May 18, 2012. *Id.* On May 31, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* An ALJ hearing via video was held on September 24, 2013, before ALJ Brian B. Rippel. *Id.* At the hearing, Plaintiff was represented by Ambria Adkins, Esq. *Id.* Plaintiff testified during the hearing, as did a Vocational Expert ("VE"). *Id.* On October 2, 2013, the ALJ found that based on the application for SSI and DIB Plaintiff protectively filed on January 12, 2012, Ms. McKinney was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. R. 20. Plaintiff appealed this decision to the Appeals Council, which denied her request for review on January 13, 2015. R. 1. Plaintiff timely filed this action.

**B. Medical History**

A detailed account of Plaintiff's medical history is unnecessary to the Court's decision because the Plaintiff has raised legal issues, rather than factual disputes requiring careful analysis of underlying facts. Thus, although the Court has read the parties' pleadings and the record, it finds that a brief recitation of Plaintiff's medical history is appropriate.

The ALJ found that Plaintiff suffered from "systemic lupus erythematosus; obesity; fibromyalgia; myofascial pain syndrome; and degenerative disk disease in bulging disk with mild nerve root impingement . . . ." R. 18. The ALJ also noted that the abovementioned impairments are severe within the meaning of the regulations. R. 19. The ALJ found Plaintiff's other conditions (thyroid disorder, myopia, hyperopia, presbyopia, and astigmatism) "considered singly and in combination" to be non-severe "because they did not exist for a continuous period of 12 months, were responsive to medication, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations." *Id.* Further, the ALJ noted that

Plaintiff was diagnosed with hypothyroidism and has a history of blurry vision; however, plaintiff required no "significant treatment for hypothyroidism or her vision problems." *Id.* Finally, the ALJ noted that Plaintiff's "medically determinable mental impairment of anxiety and depressive disorders do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities . . . ." *Id.*

**C. Testimonial Evidence**

Testimony was taken via video at the ALJ hearing held on September 24, 2013. R. 34–55. The following portions of the testimony are relevant to the disposition of this case.

1. Ms. McKinney's Testimony

At the hearing, Plaintiff testified that she was 45 years old and had a GED and driver's license. R. 39. She also testified that she lives with her husband and three children, ages twelve, fourteen, and fifteen. R. 40. Plaintiff testified that she had not worked since January 2010. *Id.*

When asked about any sources of income, Plaintiff testified that her husband has his own construction business. R. 41. The ALJ asked Plaintiff if she was involved in her husband's business in any way, and she testified that she will "take calls when they come in, but that's about it, you know, if he's not there to take the call. And I take messages for him." *Id.*

Ms. McKinney's representative at the hearing, Ms. Adkins, then asked questions regarding her claim of disability. R. 41. When asked why she could not work anymore, Plaintiff said she cannot think straight, she is in a lot of pain, she has headaches and back pain, and issues with her knees, hands, feet, and her joints, generally. R. 41–42. She testified that the issues with her joints were related to her lupus, and her lupus flares up from time to time. R. 42. In describing what her flare-ups are like, Plaintiff testified that "[i]t's like having the flu, a really bad flu virus that leaves

3

you weak and depleted and nauseated and unable to do anything, not even take a bath." *Id.* She testified that stress impacts how often she has flare-ups, but she said that they occur "every couple months." *Id.* Regarding the duration of the flare-ups, Plaintiff testified that they last for about a month. *Id.*

Plaintiff testified that steroids help to shorten the lupus flare-ups, but steroids complicate her fibromyalgia ("FM"). R. 42–43. Specifically, Plaintiff testified that the first night after taking steroids she will "cry all night because of the pain[,]" but "then it will help with the lupus." R. 43.

McKinney also testified that going out into the sun causes rashes on her face; and in the cold weather, the skin on her legs and feet mottles and turns purple. *Id.* Plaintiff further testified that she has Reynaud's Syndrome, and as a result, sometimes her fingers and toes to turn black when they get cold. *Id.* Plaintiff then testified that her hands are swollen and that her thumb joints always hurt. R. 44. She said trying to grasp or lift objects causes a sharp pain in her hands. *Id.*

Plaintiff also testified regarding side effects she suffers as a result of taking her medications. *Id.* Ms. McKinney said she takes Flexeril, and it worsens her blurred vision–a condition she already has. *Id.* She also takes Lyrica, but it makes her feel like she is drunk. R. 45.

When asked whether she suffers with fatigue during the day, she responded in the affirmative. *Id.* Plaintiff testified that she sleeps at least four hours during the day. She said that even when she is unable to sleep, she still lays down because of her back pain. *Id.* When asked how long she is able to sit or stand at one time, she testified "no more than 20 minutes." *Id.* She also testified that she could not walk more than about 100 yards at one time. R. 46. Plaintiff also said she cannot lift more than ten pounds, and last time she lifted that much weight her neck hurt for two weeks. *Id.*

Plaintiff also testified that she used to be much more active and involved around her house

4

and in her community, but since her medical impairments, she is unable to do much. R. 47. She said that in addition to the physical pain, she experiences dizzy spells and has difficulty concentrating or thinking straight as a result. *Id.* Finally, she stated that she only leaves her home about twice a month, usually to go to the grocery store, and that she goes with her husband or children because she is unable to lift the groceries.

2. The Vocational Expert's Testimony

A VE also testified at the hearing. R. 48. The VE testified that he found no prior substantial gainful activity ("SGA") in Plaintiff's history. R. 41, 49. The ALJ then asked the VE to

> assume an individual who of the claimant's age and education. There's no work history to consider. In the first hypothetical, the hypothetical employee would be limited to work of light exertional level as that's defined in the regulations, lifting up to 20 pounds occasionally, lifting and carrying up to 10 pounds frequently, standing and walking up to six hours, and sitting up to six hours in an eight-hour workday with normal breaks. Postural limitations would be to the occasional level. That would include all climbing ramps, stairs, ladders, ropes, scaffolds, et cetera. Balancing, stooping, kneeling, crouching and crawling would also be limited to occasional. Limited to occasional exposure to extreme cold and excessive vibrations in workplace hazards such as unprotected heights and hazardous machinery.

R. 49–50.

The ALJ then asked, "[a]re there jobs in the economy that can accommodate the limitations in that first hypothetical?" R. 50. The VE testified that there would be, and gave the jobs of deli cutter or slicer, office helper, and convenience store clerk as examples. R. 50. The ALJ asked the VE, "in the next hypothetical, if it was the same vocational profile, same limitations except that there'd be no climbing ladders, ropes, or scaffolds. Could that impact the jobs that you just identified." R. 51. The VE testified that it would not impact those jobs previously identified. *Id.*

Then, the ALJ asked the VE, "[n]ext hypothetical, same vocational profile, same limitations from the prior hypothetical except dropping down to the sedentary exertional level as that's defined

5

in the regulations. Are there jobs in the economy that could accommodate those limitations?" *Id.* The VE responded, "I believe that that person within those limitations could do – there would be jobs in that a person could do . . . ." *Id.* The VE testified that such a person could do the jobs of an appointment clerk, telephone information clerk, and charge account clerk. R. 51–52. The ALJ asked the VE if the hypothetical "employee has manipulative limitations such that handling and fingering bilaterally would be limited to . . . the frequent level[,] . . . would that have impacted the light or sedentary jobs you identified?" R. 53. The VE testified that, at the frequent level, it would not. *Id.* The ALJ then asked if it were more restrictive–to the occasional level–would that have an impact on those jobs. *Id.* The VE said, yes, and explained that with those limitations "it'd be difficult to sustain any kind of work." *Id.*

The ALJ asked the VE if he had an opportunity to review "the treating source opinion in 18F that was recently added to the record[.]" *Id.* The VE indicated that he had, and when asked what kind of work Plaintiff could do based upon the limitations found in the report, the VE testified that "the limitations . . . in that particular document would make it difficult to sustain any kind of work." R. 54.

### III. ALJ FINDINGS

The ALJ found that Ms. McKinney met the insured status requirements of the Social Security Act through December 31, 2010, and she had not engaged in any SGA after January 26, 2010, the alleged onset date. R. 18. The ALJ also found that Ms. McKinney had "the following severe impairments: systemic lupus erythematosus; obesity; fibromyalgia; myofascial pain syndrome; and degenerative disk disease in bulging disk with mild nerve root impingement." *Id.*

The ALJ then determined that Ms. McKinney did not have an impairment or combination

6

of impairments that meets or equals the severity of one of the listed impairments. R. 20. The ALJ found that Ms. McKinney had "the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl, with occasional exposure to extreme cold, vibrations, and workplace hazards such as moving machinery and unprotected heights." R. 21.

The ALJ also found that Ms. McKinney had no past relevant work, was, pursuant to 20 C.F.R. §§ 404.1563 and 416.963, a "younger individual" on the alleged disability onset date, had at least a high school education, and could communicate in English. R. 26–27. Finally, the ALJ determined that there were jobs in significant numbers that McKinney could perform; thus, she was not disabled under the Act from January 26, 2010, through the date of the ALJ's decision. R. 27–28.

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

In her Motion for Summary Judgment, Plaintiff argues that the ALJ made three significant errors in his decision: The ALJ (1) failed to apply Ruling SSR 12-2p at step three; (2) gave a deficient credibility analysis; and (3) erred in assigning little to no weight to the opinion of Dr. Kitzmiller. ECF No. 10 at 5.

First, Plaintiff asserts that although the ALJ found her FM to be a severe impairment at step two, he "failed to discuss or even mention it at step three when he found that her impairments, either singly or in combination, did not meet or medically equal the severity of a listed impairment." *Id.* at 5–8.

Next, Plaintiff attacks the ALJ's credibility analysis by arguing that he did not follow the required analysis provided in SSR 96-7p, SSR 96-4p, and SSR 12-2p. Plaintiff further asserts that the ALJ's analysis did not include Plaintiff's testimony regarding her pain, fatigue, headaches, and flare-ups. *Id.* at 8–10. According to Plaintiff, "the ALJ relied solely on McKinney's objective findings and selective parts of her Adult Function Reports from 2012 without considering all of McKinney's statements in those reports or her testimony that she was no longer able to engage in many of the activities she once had." *Id.* at 11.

Finally, Plaintiff contends that the ALJ's stated reasons for rejecting the opinions of her treating physicians were not "good reasons" as required by regulation and ruling. *Id.* at 13. Accordingly, Plaintiff argues, it was improper for the ALJ to give little to no weight to Plaintiff's treating physician, Dr. Kitzmiller. *Id.* at 13–15.

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 256 (1986).

2. <u>Judicial Review</u>

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664–65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

3. <u>Claimant's Credibility</u>

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong.'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

An ALJ must consider all of the evidence in the record when making a credibility

9

determination. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to an ALJ's discretion, such determinations shall not be sustained if based on improper criteria. *Breeden v. Weinberger,* 493 F.2d 1002, 1010 (4th Cir. 1974) ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained."). Moreover, SSR 96-7P states,

> [t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

1996 WL 374186 at *4.

4. <u>Fibromyalgia and SSR 12-2p</u>

> Fibromyalgia is a rheumatic disease with similar symptoms, including "significant pain and fatigue," tenderness, stiffness of joints, and disturbed sleep. Doctors diagnose fibromyalgia based on tenderness of at least eleven of eighteen standard trigger points on the body. "People with rheumatoid arthritis and other autoimmune diseases, such as lupus, are particularly likely to develop fibromyalgia." Fibromyalgia "can interfere with a person's ability to carry on daily activities. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not."

*Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 303 (4th Cir. 2004) (internal citations omitted).

"The Social Security Administration describes fibromyalgia as a 'complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *Clatterbuck v. Comm'r of Soc. Sec.*, No. 5:14CV43, 2015 WL 106175, at *12 (N.D. W. Va. Jan. 7, 2015) (quoting SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). When determining whether an individual has FM as a medically determinable impairment, an ALJ "cannot rely on the physician's diagnoses alone." *Id.*

An ALJ "will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II. A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).

## V. DISCUSSION

1. The ALJ's step three analysis is deficient

Plaintiff's first issue presented to this Court is "[w]hether the ALJ erred by failing to apply fibromyalgia ruling SSR 12-2p in evaluating McKinney's claim at step three." ECF No. 10 at 5. Regardless of SSR 12-2p, Plaintiff cites *Cook v. Heckler,* in which the Fourth Circuit rejected an ALJ's decision where it failed "to explain the reasons for the determination that Cook's arthritis did not meet or equal a listed impairment." 783 F.2d 1168, 1173 (4th Cir. 1986). The Court continued, "[the ALJ] also failed to compare Cook's symptoms to the requirements of any of the four listed impairments, except in a very summary way." *Id.*

Courts in this District have routinely held that an "ALJ must identify the relevant listings and then compare each of the listed criteria to the evidence of the claimant's symptoms at Step Three

11

of the sequential evaluation. This Court has further held that an ALJ's finding will not be upheld if the ALJ simply restates verbatim the language of the relevant listings." *Hardman v. Comm'r of Soc. Sec.*, Civ. Action No.: 5:14CV132, 2015 WL 1221357 (N.D. W. Va. Mar. 17, 2015) (internal citations and quotations omitted).

Recently the Fourth Circuit has reinforced this District's approach. In *Fox v. Colvin*, the Court held that an ALJ's decision "failed to provide sufficient reasoning to allow for meaningful judicial review" when "the ALJ did not apply findings to the disability listing. No. 14–2237, 2015 WL 9204287, at *1. The Court explained that "the ALJ engaged in the same conclusory analysis that we found to be unacceptable in *Radford*." *Id.* at 4. In *Fox*, the Court found that the ALJ's analysis was "perfunctory and offered nothing to reveal <u>why</u> he was making his decision." *Id.*

2. The ALJ's credibility analysis is supported by substantial evidence

An ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ.

When considering whether an ALJ's credibility determination is supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessment for that of the ALJ; rather, the Court must review the evidence to determine if it is sufficient to support the ALJ's conclusion. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence . . . or substitute its own judgment for that of the Commissioner." *Hays v. Sullivan,* 907 F.2d. 1453, 1456 (4th Cir. 1990). Because the ALJ actually observed the Plaintiff and is best situated to make such a determination, "the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989–990. (citing *Tyler v.*

*Weinberger,* 409 F.Supp. 776 (E.D.Va. 1976)).

In this case, the Court finds that the ALJ's credibility assessment of Plaintiff was consistent with the applicable regulation, case law, and Social Security Rulings. 20 C.F.R. § 416.929; SSR96–7P; *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The ALJ considered Plaintiff's subjective complaints and the objective medical record in reaching a conclusion regarding Plaintiff's credibility. The record contains substantial evidence to support the ALJ's decision in this regard. The evidence is such that the ALJ could find Plaintiff's statements conflicted with the objective medical evidence and record as a whole.

At the outset of the two-step process, the ALJ summarized Plaintiff's testimony and written statements regarding her daily, weekly, and monthly activities. The ALJ went into great detail describing Plaintiff's testimony, and he also specifically noted Plaintiff's testimony regarding her lupus, FM, flare ups, headaches, and pain. R. 22. The ALJ also stated, "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." R. 25.

Regarding the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id.*

In his decision, the ALJ explained that "claimant has engaged in activities that are not limited to the extent one would expect based on the complaints of totally debilitating symptoms." R. 26. The ALJ elaborated by giving examples from Plaintiff's testimony of the activities she performed: "the claimant cares for children, feeds and waters pets, takes calls and handles paperwork for her husband's job, manages paperwork and regularly participates in Cub Scouts activities, cleans, dusts,

and sweeps." *Id.* Thus, the ALJ concluded, "claimant's ability to perform such a wide range of normal and daily activities belies a finding of complete debility as alleged." *Id.*

The Court finds that the ALJ's decision contained specific reasons for his finding on Plaintiff's credibility, was supported by the evidence in the case record, and was sufficiently specific to make clear to the Court the weight the ALJ gave to Plaintiff's statements and the reasons for that weight.

3. Substantial evidence supports the ALJ's decision regarding the weight given to a treating source

In determining a claimant's disability status, the ALJ must consider all medical opinions in the record. 20 C.F.R. § 404.1527(b). An ALJ should evaluate and weigh medical opinions, paying special attention to (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. § 404.1527(c). "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Accordingly, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *see also Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984) ("The opinion of a claimant's treating physician is entitled to great weight and may

be disregarded only if there is persuasive contradictory evidence.").

Ultimately, the Commissioner is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1). Nevertheless, an ALJ must provide "good reasons" for the weight given to a treating source's opinion. § 404.1527(d)(1). SSR 96-2 further provides:

> [T]he notice of the determination or decision must contain *specific reasons* for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be *sufficiently specific* to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P, 1996 WL 374188 (July 2, 1996).

McKinney argues that the ALJ failed to provide "good reasons" for assigning little to no weight to Dr. Kitzmiller's opinion. She also contends that the ALJ's rejection of Dr. Kitzmiller's opinion is confirmation that "the ALJ was improperly seeking proof that McKinney's fibromyalgia and lupus could be confirmed by objective evidence." ECF No. 10 at 14.

In response, the Commissioner argues that "Dr. Kitzmiller's extreme opinion was inconsistent with the record, including the clinical findings and daily activities . . . ." ECF No. 12 at 14. The Commissioner notes that Dr. Kitzmiller's opinion regarding Ms. McKinney's limitations included an inability to lift more than five pounds or to stand, walk, or sit for more than fifteen minutes without interruption. *Id.* (Citing R. 407–08). Yet, the Commissioner argues that, among other sources, Dr. Kitzmiller's own records conflict with these more extreme findings. *Id.* Specifically, Dr. Kitzmiller had documented "at least intermittent reported improvement in symptoms and mostly unremarkable findings and/or good physical condition." *Id.* (citing R. 359–60, 365, 403). The Commissioner also asserts that, as a basis for these findings, Dr. Kitzmiller only

offered "lists of diagnoses, devoid of references to specific findings, to particular records, or to any rationale in support thereof." *Id.* (citing R. 407–09).

The Court agrees with the Commissioner. Although the ALJ's explanation is succinct, it is sufficient under the regulations and supported by substantial evidence. In finding Dr. Katzmiller's opinion inconsistent with the record as a whole, the ALJ supported his finding by explaining that he considered "evidence showing minimal abnormalities on clinical examination and in diagnostic studies . . . and reports that prescription and over-the-counter medications have relieved some of the claimant's symptoms . . . ." R. 26 (citations omitted). The ALJ also explained that it appeared to him as though "Dr. Kitzmiller simply adopted the claimant's allegations without balance or objectivity." R. 26.

## VI. RECOMMENDATION

After reviewing the record, the Court concludes that the ALJ's step three analysis oh his decision was deficient and remand is required on that issue. However, the ALJ's credibility determination and weight given to Dr. Kitzmiller's opinion are supported by substantial evidence. Therefore, the Court **RECOMMENDS THAT**:

1. Plaintiff's [ECF No. 9] Motion for Summary Judgment be **GRANTED IN PART**; and
2. Commissioner's [ECF No. 11] Motion for Summary Judgment be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and

16

Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: February 19, 2016     /s/ *James E. Seibert*
                              JAMES E. SEIBERT
                              U.S. MAGISTRATE JUDGE